## DURRETTS *vs.* HOOK.

1. A. sold to B. a certain tract of land, and executed his bond for a conveyance.    B., at the time of the purchase, promised to pay A. a part of the consideration in a day or two.    In the mean time B. purchased from one H. certain notes held by him on A., who was reputed to be insolvent, and tendered these notes to A. in payment of such part of the purchase money.    At the time of the purchase, B. purposely avoided saying anything to A. as to manner of making the payment, and left upon his mind the impression that he was to receive the remaining part of the consideration in money.    In a suit in chancery for a specific performance of the contract, brought by B. against A., the court held, that the notes were not a good tender of such remaining part of the purchase money.

2. A specific performance of a contract is not a matter of course, but rests entirely in the discretion of the court, upon a view of all the circumstances of the case.    If there has been any unfairness or want of good faith, or improper conduct of any kind, on the part of the party asking the aid of the court, a specific performance will not be decreed.

APPEAL from Saline Circuit Court.—In Chancery.

HAYDEN, *for Appellants.*

1. The court permitted the complainant, upon the hearing of the cause, to read and give irrelevant and incompetent proof.

2. The finding of the facts, by the court, was against the evidence.

3. The decree of the court is against equity, and is not warranted by the evidence.

1st. The complainant has laid no foundation in his original or amended bills of complaint to warrant the reading of the paper writing, which he read as and for the will of Elijah Hook.—He has not stated in his bill that said Elijah made a will, nor has he made an exhibit of a will in the bill of complaint; nor stated a reason or cause why, if there be a will, he did not produce it as an exhibit; nor, in fact, has he stated, that the said Elijah devised by will the land mentioned in the bill. Therefore, the paper-writing read as a will was foreign to the facts charged in the bill.—See twenty-first section of the statute, Practice in Chancery, p. 510, of the Digest of 1835; 1 Wheeler's Digest, 320; 1 Bibb, 173; 1 A. R. Marsh, 325.

2d. The answer of Richard Durrett not having been replied to by complainant, stands admitted and is conclusive, and therefore the evidence of Thomas, so far as it may appear to contradict his answer, is to be wholly disregarded. (1 Wheeler's Ch. Digest, 341; 2 Cowen, 711; 1 Bibb, 277; 2 Cowen, 118.) But even if the answer of Richard Durrett were denied by replication, so as to make it proper for the court to look into the evidence of Thomas, the court will perceive, that the demand spoken of by the witness was not a demand of a deed for *the tracts* of land mentioned in the bill of complaint, but was a demand of a deed of conveyance for *a tract* of land stated by the witness as having been purchased by said Richard Durrett of said Clark, whereas, the complainant, in his own bill, does not pretend, that the purchase of the land was made by Richard Durrett, but that it was made by Benjamin L. Durrett of said Clark, so that his evidence is inapposite and irrelevant to the cause; but, as a matter of course, it cannot be looked into as against the defendant, Richard Durrett.

3d. The decree is against equity, and not warranted by the proofs in the cause.

In the first place, it is most manifest, from the anwers of defendants, and proofs, that complainant has no claim to the decree against Richard Durrett, for, by the answer of him, R. Durrett, which is to be regarded as true, the complainant has not complied with the contract made by McAlexander with defendants, nor did the said McAlexander, his assignor. And it is equally clear, that the decree against the defendant, Benjamin, is unwarranted—

First: Because the contract was by parol, and the bond for title was not delivered to McAlexander by Richard Durrett, with the assent of said Benjamin L. Durrett, but on the contrary, it was taken by McAlexander from the table of Richard Durrett, without his consent: but had it been taken *with the consent* of R. Durrett, it

would not have amounted to a delivery, binding on Benjamin L., because Benjamin L. expressly limited the agency of Richard Durrett to the preparing and signing the bond, *under positive directions* to him not to deliver it, but to keep it to be delivered by him, Benjamin L. Durrett, *himself*, to McAlexander.

Second: If the bond had been delivered by the authority of Benjamin, the contract was not complied with by McAlexander; but, on the contrary, a studied system of unfairness, as well in obtaining the consent of Benjamin verbally, to sell the land, as also to violate it on the part of McAlexander, and of which the complainant was fully advised and had notice. A system of conduct wholly and utterly irreconcilable with the principles of good faith and honesty, and such as to deprive the complainant of all claims to the assistance of a court of chancery to compel a specific performance of the contract.—See the following authorities :— 6 Johns. Chan. Rep., 222, *et seq.*, Seymour *vs.* Delancy, and the authorities there cited.

S. M. BAY, *also, for Appellants.*

1. The specific execution of a contract in equity, is matter not of absolute right in the party, but of sound discretion in the court, and this discretion must be exercised according to the general rules and principles of courts of chancery. (See 2 Story's Eq. Jurisprudence, pp. 39, 47, 53, 79, 81; 1 Sugden on Vendors, 247; Seymour *vs.* Delancey, 6 Johns. Chan. Rep., 222.) In this case, Chancellor Kent remarks, "It it a settled principle, that a specific performance of a contract of sale is not a matter of course, but rests entirely in the discretion of the court, upon a view of all the circumstances."—2 Bibb, 78; 11 Peters, 229.

2. Unless the agreement is fair and just in all its parts, and equitable under all the circumstances, courts of equity will not decree specific performance, but will leave the party to his remedy at law.— *Ibid.*

In Baxter *vs.* Lister, 3 Atk., 385, Lord Hardwick remarked, that nothing was better established in chancery, that than every agreement or contract of sale ought to be *certain, fair*, and *just in all its parts*, and if any of those ingredients were wanting in the case, the court would not decree a specific performance.— 10 Vesey, 292; 18 *Ibid.*, 10; 4 Peters, 328.

3. In this case, it is evident, that there was a design on the part of McAlexander, complainant's vendor, and complainant, to overreach and mislead the defendant Benjamin, by leaving upon his mind the impression that he was to receive a part of the consideration in money.

The conduct of McAlexander throughout the whole transaction was unfair and unjust, and such as no honest man would have resorted to. He expressly declares that he agreed to pay the balance of the purchase money in a day or two, and that at the time of the purchase, he *purposely avoided* saying any thing about making payment in notes on the defendant, Benjamin.

4. Admitting, that the agreement was such a one as a court of equity would compel the parties to specifically perform, yet the decree of the Circuit Court essentially changes the terms of the agreement, by permitting the complainant to

.credit a part of the consideration of the land, on the bond of the defendant, Benjamin, to complainant. Instead of decreeing the specific performance of the agreement between McAlexander and Benjamin Durrett, the court has decreed the execution of that which never was the agreement of the parties.

Todd, *for Appellee.*

1. The offer to pay Benjamin L. Durrett the sum of $280 which McAlexander owed him on the purchase of the land, in Durrett's own notes then due, without any pretended offset, is a good payment.

2. The facts and circumstances do not disclose any fraud in procuring the contract of sale from Durrett, by not disclosing a projected engagement to purchase his notes to make the payment.

3. By the will of E. Hook, the complainant is devisee of this contract; and it is no objection to the will, that it was a joint testament, for the benefit of the survivor.

4. Offer is fully proved of the payment of the last instalments, as no objection was made at the time; but the party need not tender, when he is informed that it would be unavailing.— 6 Litt. Cases, 204.

5. The statute of frauds does not protect Benjamin Durrett, who holds *an equity only*, and he procuring and assenting to the sale of the legal title.

6. That McAlexander, the assignor of the title bond, is a competent witness, being released in full of the liability by the assignment; and his being a party in the suit is formal only.

7. If both parties are in default, neither can take advantage of non-performance. — 4 Bibb, 413.

8. Benjamin L. Durrett, the holder of an equity, encouraging McAlexander to buy the legal estate, cannot set it up against Hook, and is not within the statute of frauds.— 2 Sugden on Vendors, 299; 1 Johns. Chan. Rep., 354; 3 Litt., 55.

Tompkins, *J., delivered the opinion of the Court.*

On the eleventh day of June, in the year 1838, William Hook commenced this suit against Richard Durrett and Edmund McAlexander, in the Circuit Court of Saline county, on the chancery side thereof. In his bill he states, that on the 25th day of October, 1834, Richard Durrett made and executed to Edmund McAlexander his writing obligatory, by which he bound himself to execute and make to said McAlexander a good and lawful deed to a certain tract of land in said county, containing one hundred and twenty acres; and that, for a good and valuable consideration paid by Elijah Hook and William Hook, the complainant, the said McAlexander assigned to them the said writing obligatory; and the said conveyance having to be made by the said Richard Durrett on demand, and Elijah Hook, one of the assignees thereof, having departed this life on the first day of July, 1835, the complainant, William, on the first day of January, 1838, demanded of the said Durrett a deed for the same, according to the terms of the said writing, and the said Durrett refused to make the same, &c.

48

The complainant further alleges, that he is sole devisee and executor of the said Elijah Hook, and that the said Richard Durrett, by said writing obligatory, admitted, that he had been fully paid for the said land by the said McAlexander; and the complainant states, that the same is true, or that, if he has not, it has been by the fault, negligence or consent of the said Durrett, and by his connivance, to form a pretext for not conveying to the complainant. The bill concludes in the usual manner, praying that the defendant be caused to answer, to convey, &c., and that McAlexander also answer, &c.

Richard Durrett answered, praying that Benjamin L. Durrett be made a party to the bill of the complainant, and stated, that the land mentioned in the bill was purchased by him, from one Richard Clark, for the consideration of four hundred and ten dollars; two hundred dollars of which said Benjamin paid to said Clark in cash, and executed his two notes, with this defendant as security, for the remaining part of two hundred and ten dollars, to said Clark, with the respondent Richard as his security; that, to secure himself from sustaining any loss by being security as aforesaid, the respondent took the deed of conveyance of said land from Clark to himself, but permitting said Benjamin, the beneficial owner of the land, to dispose of it at his pleasure; that said Benjamin did afterwards, as the defendant was informed, and as he expected to be able to prove, on the 25th day of October, 1834, contract to convey the said land to one Edmund McAlexander, for the sum of four hundred and ninety dollars, two hundred and eighty dollars of which he promised to pay to said Benjamin in a few days, and for the remaining sum of two hundred and ten dollars, (for which the respondent was still bound to said Clark as security, as aforesaid,) said McAlexander gave his notes to this respondent, with William Hook as security; but the respondent states, that after the said McAlexander obtained the bond for a title as above-mentioned, and giving his notes as aforesaid to this respondent, he failed to comply with his contract to pay to said Benjamin the said sum of two hundred and eighty dollars, and refused to pay the same, and refused to deliver up the title bond which he had obtained under false pretences as aforesaid.

In an amended answer, the defendant, Richard, admits the execution of the title bond, and states, that the two notes executed to him by McAlexander, and the complainant, Hook, as his security, were due at the same time those executed by him as security for Benjamin L. Durrett, and were to become due to Richard Clark, and that McAlexander promised to pay them when so due, and deliver them to the respondent. The respondent, Richard, in his amended answer, further stated, that said Benjamin L. Durrett and McAlexander came together to his house, to inform him of the contract for the sale and purchase of this land, and that said Benjamin did not remain there until the bond for the title to the land was executed by the respondent; but went home and instructed the respondent not to deliver the said writing to said McAlexander, but to keep it for him, said Benjamin, and that he would himself deliver it, whenever McAlexander should pay him the said sum of two hundred and eighty dollars; that, after the departure of said Benjamin, said McAlexander drew said writing obligatory, and that this respondent did then sign

and seal the same, and lay it on the table, not intending to deliver it to said Mc-Alexander, but that McAlexander, about the time he was going to leave the respondent's house, without the respondent's leave, took the writing and carried it away with him; he admits, that he did not forbid him, or say any thing to him at the time, but refrained, believing that McAlexander would fulfil his promise, and also from motives of delicacy. The answer concludes with a denial of any payment being made either by Hook or McAlexander to Benjamin L. Durrett, of the sum of two hundred and eighty dollars, or to Richard Clark or to the respondent, of the sum of two hundred and ten dollars, for which the respondent stood bound to Clark as security for Benjamin L. Durrett as aforesaid, for a part of the consideration of the land.

On the 22d of February, 1840, the complainant filed in this cause an amended bill, making Benjamin L. Durrett co-defendant to the bill of complaint. In this amended bill he states, that said Benjamin L. Durrett, at the time of the purchase of the said land in the original bill mentioned, from Richard Durrett, by McAlexander, was the owner of the said land, and held the title thereto in the name of the said Richard Durrett, who executed the title bond to said McAlexander, and who assigned the same to the said complainant, as above in said bill stated; that the same was so held to deceive and defraud the said Benjamin L. Durrett's creditors; that the said Benjamin was largely indebted and owed said Elijah and William Hook two notes which are made exhibits to this bill, the one dated November 29, 1833, for $325, due at three months after date; the second due at nine months after date, given the same day for $675; that, at the time of the purchase, the said McAlexander executed his two notes to Richard Durrett for two hundred and ten dollars, with William Hook security, due at the same time said Richard's notes to said Clark were due, and said McAlexander promised to pay said Benjamin the residue, being two hundred and ninety dollars, in a few days, and that the said McAlexander, at the time specified, offered the said Benjamin payment in the above-mentioned notes of Benjamin L. Durrett, due to Elijah and William Hook, the same being placed in his hands, with authority by Elijah and William Hook to make the first payment for the land, and said Benjamin, admitting said notes to be due, refused to receive a credit on them in payment for the land; that, after the title bond of the defendant, Richard, was assigned to him by McAlexander, as in the original bill stated, when one hundred dollars, the first note of McAlexander, became due, for the last payment he offered to pay the same to the said Richard in money, and that he refused to receive it, and declared that he would neither receive pay for that note, nor for the other given for $110; that he repeatedly offered to said Benjamin and Richard to allow the whole payments for the said land out of the aforesaid notes which the said McAlexander re-assigned to him when he assigned to him the title bond aforesaid. This amended bill prays, that both defendants may answer, and prays a specific performance, &c.

Richard Durrett answers this amended bill; denies that the land held, as stated in his last amended bill, was held to deceive and defraud the said Benjamin's creditors; and also denies, that either said McAlexander or the complainant ever offered to pay to him the sum of one hundred dollars, as in his bill is stated, or

that he himself ever refused to receive of him the said sum of one hundred dollars, or the said sum of one hundred and ten dollars, as in his bill is stated.

Benjamin L. Durrett came in and answered, stating the purchase of the land from Clark by himself, and the sale to McAlexander, and every thing relative to the purchase from Clark and the sale to McAlexander, as is stated in the answer of the said Richard. The answer of Benjamin L. Durrett re-asserts all the facts set up by that of Richard Durrett relative to the sale of the land to McAlexander, and his offer to pay in the notes made by the respondent, Benjamin, to E. and W. Hook. He also relies on the statute of frauds.

The bill of exceptions sets out the title bond made by Richard Durrett to Mc-Alexander, and its asssignment, as stated in the bill, to Hook, complainant.

McAlexander having been released by Hook, was introduced as a witness. This witness states the agreement of himself and Benjamin L. Durrett, for the sale and purchase of the land, the making of the title bond in the same manner as the same is stated in the bill and answer above: but he states that the title bond was delivered to him by Richard Durrett; that, a day or two afterwards, the witness called on the said Benjamin, and tendered to him payment of the said balance of said purchase money, the said notes executed by the said Benjamin to said William and Elijah Hook, and by the said William, surviving partner of said Elijah, assigned to witness; that said Benjamin then refused to receive said notes in payment of said balance, and that said witness refused to pay said balance in any other manner than by said notes; that said witness then assigned said title bond to the complainant.

This witness, on cross examination, stated, that before he had made any agreement with the said Benjamin for the purchase of said land, he and the complainant had some conversation about said purchase, which conversation was held at the instance of the said witness, and the complainant then told the witness, that if he could purchase said land of said Benjamin, he, the complainant, would sell to the witness the said notes of the said Benjamin at a large discount, and would give witness time on the balance of said notes; that the complainant offered to deduct about ninety dollars from said notes; that the witness agreed to buy the notes on such terms; that, at the time he purchased the land, he said nothing about paying the balance of said purchase-money in said notes; that he purposely avoided saying any thing to said Benjamin at the time of the purchase, about the manner of making the payment of the balance of the purchase-money, and he believes he left the impression on the mind of the said Benjamin at the time of the purchase, that he would receive from the witness the remaining part of the price of the land, in money, and that he did not believe that said Benjamin would have sold the land, unless he had expected to receive the remaining part in money; that, some time afterwards, he assigned the said bond for a conveyance of the land, to the complainant; and that he also re-assigned to the complainant said notes of said Benjamin, made to said William and Elijah Hook.

The complainant proved, by another witness, a demand of a deed from Richard Durrett, and that Richard Durrett admitted, at the same time, that the money was tendered to him by Hook some three or four months after it was due.

One Garrett, produced as a witness by defendant, stated, that he was at the house of Richard Durrett in the year 1834, and that said McAlexander asked him to witness a title bond, and that he did so, and that said McAlexander took it up off the table which was sitting at the end of the house, and (says the witness) we all walked towards the fire-place. McAlexander appeared to be in a hurry, and observed, that he would pay over to Benjamin Durrett, in a day or two, witness thought it was $200, or more, and McAlexander left without sitting down, and that Mrs. Durrett asked Richard Durrett if McAlexander ought to have had that paper, and that Durrett answered, he reckoned McAlexander would do what was right.

The defendant in error contends, that as Benjamin L. Durrett, if he had brought an action against the complainant, Hook, or against McAlexander, on the agreement to pay $280 in time specified, *i. e.*, two or three days, would, under the statute of set-off, be compelled to receive the notes by him made to Hook in pay, therefore, when Hook, by his bill in chancery, prays a specific performance of the contract to convey land, Durrett shall be compelled to take the consideration to be paid for the land in his own notes. I cannot perceive that the one is a consequence of the other. If Durrett had sought to compel Hook or McAlexander to pay this sum of $280, the law, which he calls to his aid, says that he shall receive in pay his own paper, which the defendant in the action at law holds. But here it is Hook, assignee of McAlexander, that sues Durrett, and wants Durrett to receive his own paper. This cannot prevail. If Durrett be insolvent, as it is said, he ought to be secured in his right to pay all his funds either equally to all his creditors, or to any one whom he may prefer. But it is contended, that there is no pretence set up in the answer or evidence introduced to show that Durrett wished to do the one or the other of these things, and therefore Hook supposes he has the right to appropriate all of Durrett's substance to his own use.

There cannot certainly be any necessity for him either to state in his answer, or to prove, that he did intend to do any such thing. It is true that the complainant has alleged in his bill, that this land was conveyed to Richard Durrett by Clark, to deceive and defraud the creditors of Benjamin L. Durrett, and B. L. Durrett has unnecessarily denied it in his answer. It may possibly be true that Durrett did intend to deceive and defraud his creditor, but that cannot possibly give Hook any right to call on a court of equity to apply the property of Durrett to pay what he owes to Hook. But if we admit, for the present, that a court of equity could correctly compel a defendant, who had promised to convey for a consideration in money, to receive his own notes in payment for the land, yet the court will always see that the person who prays its aid comes in with clean hands. In this case, Hook first introduces his complaint with the most impertinent and irrelevant charge that the title to this land was held by Richard Durrett to deceive and defraud the creditors of Benjamin L. Durrett; that he, B. L. Durrett, was largely indebted, and owed Hook a large sum of money. He next introduces this said McAlexander, whom he had released in order to render him competent, to prove his own unworthiness. McAlexander, as above stated, declares that in the treaty for this land he had cautiously concealed from B. L. Durrett that the first payment ($280)

was to be made in his own (Durrett's) notes, and that he did not believe that Durrett would have agreed to sell him the land if he had not expected to receive the first payment in cash, and the statement of this witness is sufficient to induce any one to believe that it was intended by Durrett that the delivery of the deed and the payment of the sum of $280 should be simultaneous acts. But as it seems, he takes up the deed and goes off hastily, observing, that in two or three days he would pay the money to B. L. Durrett. He gave no written promise to pay the money. No man of business habits would have suffered the bond to be carried away under such circumstances, nor would any honest candid man have attempted such an act. Mr. Hook not only receives this obligation by assignment stained with the grossly improper conduct of his assignor; but his own witness, this said McAlexander, proves that he prompted the witness to the act. If the conduct of McAlexander had been otherwise honest, a delivery of the bond by Durrett would be presumed, but as the case now is in evidence, a jury would be very easy indeed to find a delivery of the bond.

The witness, Garrett, says, that the table on which the bond lay, when he witnessed it, was at the far-end of the house, and we all walked to the fire; that McAlexander appeared to be in a hurry, and went away, making the promise to pay B. L. Durrett in two or three days.

A specific performance of a contract is not a matter of course, but rests entirely in the discretion of the court, upon a view of all the circumstances of the case.— 6 Johns. Chan. Rep., 222, Seymour *vs.* Delancy.

In this case the Circuit Court decreed a specific performance by Durrett, and that Hook should credit the notes of B. L. Durrett above-mentioned, with the first payment, viz., $280, and pay to Richard Durrett the sum of $210, with interest.

This decree of the Circuit Court must be reversed, and the bill dismissed at the costs of the complainant.

*Note.*— NAPTON, Judge, did not sit in this case, having been of counsel in the court below.